UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN M. GREENBAUM, ALAN HAYMAN, and THE ESTATE OF SHIRLEE HAYMAN,<br><br>                              Plaintiffs,<br><br>-v-<br><br>CLEARSTREAM BANKING S.A.,<br><br>                              Defendant. | **COMPLAINT**<br><br>Civil Action No.: 22-cv-1666 |

**INTRODUCTION**

1. This is an action for execution on, and turnover of, certain assets held by Defendant Clearstream Banking S.A. ("Clearstream") to satisfy a Judgment entered in favor of Plaintiffs Steven M. Greenbaum, Alan Hayman, and The Estate of Shirlee Hayman ("Plaintiffs") and against the Islamic Republic of Iran ("Iran" or the "Government of Iran"). Unless otherwise indicated, Plaintiffs allege the following facts on information and belief, based on their review of publicly available information, and based on their own personal knowledge.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States, including, but not limited to, 22 U.S.C. § 8772, section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322 (2002) (reproduced as a note to 28 U.S.C. § 1610), and/or Federal Rule of Civil Procedure 69. This Court also has subject matter jurisdiction pursuant to its ancillary jurisdiction to enforce its own judgment. *See Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010); *Weinstein v. Islamic Rep. of Iran*, 831 F.3d 470, 479 (D.C. Cir. 2016). The

U.S. District Court for the District of Columbia had subject matter jurisdiction over the action giving rise to Plaintiffs' Judgment under 28 U.S.C. § 1330.

3. This Court has personal jurisdiction over Clearstream under Federal Rule of Civil Procedure 4(k)(2) because (a) Plaintiffs' claims arise under federal law; (b) Clearstream is not subject to jurisdiction in any state's courts of general jurisdiction; and (c) exercising jurisdiction over Clearstream is consistent with the United States Constitution and laws.

4. In addition, this Court has specific personal jurisdiction over Clearstream under CPLR 302 because Clearstream transacts business within New York and Plaintiffs' causes of action arise from those acts. Specifically, Clearstream is registered with the New York State Department of Financial Services, maintains multiple cash correspondent accounts in New York, has an office in New York, employs staff in New York, and received $1.7 billion of bond proceeds in New York that were thereafter credited to an account owned or controlled by (or maintained on behalf of) Bank Markazi and which gave rise to Plaintiffs' causes of action.

5. Venue is proper in this District because Clearstream resides in this District under 28 U.S.C. § 1391(b)(1) and (c)(2).

## THE PARTIES

6. Plaintiff Steven M. Greenbaum is a judgment creditor of Iran. Steven M. Greenbaum is a United States citizen.

7. Plaintiff Alan Hayman is a judgment creditor of Iran. Alan Hayman is a United States citizen.

8. Plaintiff Estate of Shirlee Hayman is a judgment creditor of Iran. Prior to her death, Shirlee Hayman was a United States citizen.

9.      Defendant Clearstream Banking S.A. is a banking corporation organized under the laws of the Grand Duchy of Luxembourg.  Clearstream does business in New York through a representative office located at 1155 Avenue of the Americas, Floor 19, New York, NY 10036.

## BACKGROUND

### Plaintiffs' Judgment Against Iran

10.     On August 8, 2001, the terrorist organization Hamas orchestrated a suicide bombing of a restaurant in Jerusalem, Israel, which killed multiple people, including Judith Greenbaum.

11.     Plaintiffs subsequently sued Iran for damages pursuant to 28 U.S.C. § 1605(a)(7) based on the material support and assistance Iran provided to Hamas.

12.     Iran defaulted, and the U.S. District Court for the District of Columbia thereafter entered Findings of Fact and Conclusions of Law.  *See Greenbaum v. Islamic Republic of Iran*, 451 F. Supp. 2d 90 (D.D.C. 2006).

13.     On August 31, 2006, the Court entered Judgment in favor of Plaintiffs and against Iran (the "Judgment").  In the Judgment, the Court awarded Plaintiffs $19,879,023.00 in compensatory damages.

14.     On December 10, 2008, Plaintiffs registered the Judgment in this Court under 28 U.S.C. § 1963.  Accordingly, the Judgment has the same effect as a judgment entered by this Court and may be enforced in like manner.

15.     After accounting for post-judgment interest and reducing for recoveries obtained to date, the Judgment remains outstanding.

16.     Specifically, as of January 26, 2022, Plaintiffs' are entitled to compensatory damages of $23,485,922.07 plus post-judgment interest.

**The Blocked Financial Assets**

17. Clearstream is a foreign financial institution.

18. Clearstream offers securities settlement and safekeeping services for customers from around the world. It provides post-trade infrastructure and securities services for the international market and 58 domestic markets worldwide, with customers in 110 countries.

19. Clearstream maintains a cash correspondent account (the "Correspondent Account") at a U.S. banking institution located in New York.

20. Cash correspondent accounts are accounts in domestic banks held in the name of foreign financial institutions. Cash correspondent accounts allow foreign financial institutions, such as Clearstream, to effect U.S. dollar transactions.

21. Each day, $7-9 billion U.S. dollars are deposited into the Correspondent Account.

22. Bank Markazi is the central bank of Iran.

23. In 1994, Bank Markazi opened a direct account with Clearstream in Luxembourg.

24. Bank Markazi invested in several U.S.-dollar-denominated bonds issued by foreign sovereigns or supranational entities.

25. Many of the bonds Bank Markazi purchased were issued pursuant to prospectuses that required the purchaser to receive bond proceeds, including interest and redemption payments, in New York.

26. Bank Markazi has long engaged Clearstream to facilitate Bank Markazi's receipt of bond proceeds in New York.

27. Between 1994 and 2008, Clearstream received bond payments on behalf of Bank Markazi into the Correspondent Account.

28. Clearstream would then credit Bank Markazi's account in Luxembourg with a corresponding right to payment.

29. In 2008, however, because of increasing scrutiny of Iranian financial transactions, Bank Markazi stopped processing its bond proceeds through Clearstream directly.

30. Instead, Bank Markazi began using an intermediary bank—Banca UBAE S.p.A. ("UBAE")—to process its bond proceeds through Clearstream.

31. UBAE is an Italian bank.

32. In January 2008, UBAE opened a custodial account with Clearstream.

33. Shortly thereafter, Bank Markazi arranged for Clearstream to transfer the balance of Bank Markazi's direct Clearstream account to UBAE's account at Clearstream.

34. Bank Markazi also opened its own account at UBAE.

35. Clearstream continued to receive U.S. dollar bond proceeds in New York on behalf of Bank Markazi, but pursuant to the terms of the documentation directing the Bank Markazi account transfer, Clearstream credited UBAE's account with a corresponding right to payment (instead of crediting Bank Markazi's account directly).

36. Through Bank Markazi's relationship with UBAE, Bank Markazi retained equitable title to, or a beneficial interest in, the right to payments credited to UBAE's account at Clearstream.

37. In June 2008, Clearstream blocked the UBAE account because of its connection to Bank Markazi.

38. After Clearstream blocked the UBAE account, Clearstream continued to receive, on behalf of Bank Markazi, U.S. dollar bond proceeds in its Correspondent Account in New York.

39. Clearstream opened a sundry blocked account, account number 13675 (the "Blocked Account"), to which it credited the U.S. dollar bond proceeds it received in New York on behalf of Bank Markazi.

40. Clearstream has credited at least $1.7 billion U.S. dollars to the Blocked Account. All assets that were, are, or will be credited to the Blocked Account, including, but not limited to, (a) the $1.7 billion U.S. dollars already credited to the Blocked Account, (b) any right to payment associated with the Blocked Account, or (c) any indebtedness owed by Clearstream associated with the Blocked Account, are collectively referred to herein as the "Blocked Financial Assets."

41. Clearstream holds the Blocked Financial Assets on behalf of Bank Markazi.

42. Bank Markazi has equitable title to, or a beneficial interest in, the Blocked Financial Assets, including, but not limited to, the right to payment of the Blocked Financial Assets.

### The United States Imposes Sanctions on Iran and Bank Markazi

43. Since 1984, Iran has been designated as a state sponsor of terrorism by the U.S. Department of State. *See* 49 Fed. Reg. 2836-02 (Jan. 23, 1984).

44. In 1995, the United States imposed sanctions on Iran under the International Emergency Economic Powers Act ("IEEPA"), Pub. L. No. 95-223, § 202, 91 Stat. 1626 (codified as amended at 50 U.S.C. § 1601 *et seq.*), because it found that "the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States." Exec. Order No. 12,957, 60 Fed. Reg. 14,615 (Mar. 15, 1995); *see also* Exec. Order No. 12,959, 60 Fed. Reg. 24,757 (May 6, 1995).

45. In August 1995, the Office of Foreign Assets Control of the U.S. Treasury Department ("OFAC") determined that Bank Markazi was "owned or controlled by the

Government of Iran." Implementation of Exec. Order No. 12,959 With Respect to Iran, 60 Fed. Reg. 40,881-02, 40,883 (Aug. 10, 1995).

46. Under these sanctions, it became illegal for Clearstream to export services (including financial services) to Iran.

47. Transfer instructions directing the movement of funds or the performance of other banking services that would directly or indirectly benefit the Government of Iran are requests for the exportation of services to Iran.

48. On April 10, 2008, OFAC added Bank Markazi to its List of Blocked Persons, Specifically Designated Nationals, Specifically Designated Terrorists, Specially Designated Global Terrorists, Foreign Terrorist Organizations, and Specially Designated Narcotics Traffickers (the "SDN List"). *See* 73 Fed. Reg. 37,536, 37,553 (July 1, 2008).

49. On February 5, 2012, President Obama issued Executive Order 13599 pursuant to, *inter alia*, authority conferred on him by IEEPA. Under that Executive Order, President Obama blocked "[a]ll property and interests in property of the Government of Iran, including the Central Bank of Iran, that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person, including any foreign branch." 77 Fed. Reg. 6659, § 1(a) (Feb. 5, 2012). President Obama also blocked "[a]ll property and interests in property of any Iranian financial institution, including the Central Bank of Iran, that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person, including any foreign branch." *Id.* § 1(b).

50. Following issuance of Executive Order 13599, OFAC promulgated the Iranian Transactions and Sanctions Regulations (the "ITSRs") pursuant to IEEPA in order to implement

the Executive Order.  *See* Iranian Transactions Regulations, 77 Fed. Reg. 64,664 (Oct. 22, 2012); *see also* 31 C.F.R. Part 560.  Prior to October 22, 2012, 31 C.F.R. Part 560 had been titled the Iranian Transactions Regulations.  In order to implement Executive Order 13,599, OFAC, among other things, changed the title of 31 C.F.R. Part 560 to the ITSRs, added numerous new sections to the ITSRs, and reissued the ITSRs "in their entirety."  77 Fed. Reg. at 64,665.

51. All of Bank Markazi's property and interests in property was and remains blocked by Executive Order 13599 and the ITSRs.

52. As part of the Joint Comprehensive Plan of Action of July 14, 2015 ("JCPOA") certain of the sanctions imposed on Iran and Bank Markazi were lifted, but Executive Order 13599 and the ITSRs remained in place.  Accordingly, even during the period when the United States was part of the JCPOA, Bank Markazi's property remained blocked by Executive Order 13599 and the ITSRs.

53. In May 2018, President Trump terminated the United States' participation in the JCPOA.

54. Thereafter, Bank Markazi was again placed on the SDN List.  *See* Notice of OFAC Sanctions Actions, 85 Fed. Reg. 18,334, 18,356 (Apr. 1, 2020).

55. As of today, Bank Markazi is still on the SDN List.

56. As of today, all of Bank Markazi's property and interests in property is blocked under Executive Order 13599, the ITSRs, and other U.S. blocking orders, regimes, rules, and regulations, all of which were issued under IEEPA.

### The Writ of Execution Served on Clearstream

57. On January 27, 2022, the Clerk of this Court issued a Writ of Execution for the Judgment.

58. On February 2, 2022, Plaintiffs delivered the Writ of Execution to the U.S. Marshals Service in this District for service on Clearstream.

59. On February 16, 2022, the U.S. Marshals Service levied upon the Blocked Financial Assets by serving the Writ of Execution on Clearstream.

60. Less than 90 days have passed since the U.S. Marshals Service levied upon the Blocked Financial Assets.

## FIRST CLAIM FOR RELIEF

### 22 U.S.C. § 8772

61. Plaintiffs repeat and re-allege each of the preceding Paragraphs as if fully set forth herein.

62. The Blocked Financial Assets are financial assets within the meaning of 22 U.S.C. § 8772.

63. Clearstream is a foreign securities intermediary doing business in the United States within the meaning of 22 U.S.C. § 8772.

64. The Blocked Financial Assets are identified in and the subject of proceedings in the United States District Court for the Southern District of New York in *Peterson et al. v. Islamic Republic of Iran et al.*, Case No. 13 Civ. 9195 (LAP).

65. Bank Markazi holds equitable title to, or the beneficial interest in, the Blocked Financial Assets.

66. No one other than Bank Markazi holds equitable title to, or a beneficial interest in, the Blocked Financial Assets.

67. The Blocked Financial Assets are blocked assets within the meaning of 22 U.S.C. § 8772 because they are seized or frozen by the United States under section 202 or 203 of IEEPA.

9

68. Alternatively, assuming the Blocked Financial Assets are currently located outside of the United States, if the Blocked Financial Assets were located in the United States, they would be blocked assets within the meaning of 22 U.S.C. § 8772 because they would be seized or frozen by the United States under section 202 or 203 of IEEPA.

69. In the Judgment, Plaintiffs were awarded compensatory damages against Iran for damages for personal injury or death caused by an act of torture, extrajudicial killing, aircraft sabotage, or hostage-taking, or the provision of material support or resources for such an act.

70. Accordingly, the Blocked Financial Assets are subject to execution and turnover in satisfaction of the outstanding compensatory damages awarded to Plaintiffs in the Judgment, specifically, $23,485,922.07 plus post-judgment interest.

71. Alternatively, Plaintiffs are entitled to an order directing that the Blocked Financial Assets be brought to New York and subsequently subject to execution and turnover in satisfaction of the outstanding compensatory damages awarded to Plaintiffs in the Judgment, specifically, $23,485,922.07 plus post-judgment interest.

## SECOND CLAIM FOR RELIEF

### Section 201(a) of TRIA

72. Plaintiffs repeat and re-allege each of the preceding Paragraphs as if fully set forth herein.

73. Iran is a terrorist party within the meaning of section 201(d)(4) of TRIA because it is a designated state sponsor of terrorism.

74. Bank Markazi, as the central bank of Iran, is an agency or instrumentality of Iran within the meaning of section 201(a) of TRIA.

75. The Blocked Financial Assets are blocked assets of an agency or instrumentality of a terrorist party within the meaning of section 201(a) of TRIA.

10

76. Plaintiffs have a Judgment against Iran for claims based upon an act of terrorism and for which Iran is not immune under section 1605(a)(7) (as such section was in effect on January 27, 2008) of title 28, United States Code.

77. Accordingly, the Blocked Financial Assets are subject to execution and turnover in satisfaction of the outstanding compensatory damages awarded to Plaintiffs in the Judgment, specifically, $23,485,922.07 plus post-judgment interest.

## THIRD CLAIM FOR RELIEF
### CPLR 5225 and 22 U.S.C. § 8772/Section 201(a) of TRIA

78. Plaintiffs repeat and re-allege each of the preceding Paragraphs as if fully set forth herein.

79. Under Federal Rule of Civil Procedure 69, "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."

80. The Blocked Financial Assets are subject to execution in satisfaction of the Judgment under 22 U.S.C. § 8772 and/or section 201(a) of TRIA, as set forth above.

81. Clearstream is in possession or custody of the Blocked Financial Assets, money or other personal property in which Iran has an interest.

82. Under CPLR 5225(b), Plaintiffs are entitled to an order requiring Clearstream to deliver so much of the Blocked Financial Assets as are necessary to satisfy the outstanding compensatory damages awarded in the Judgment, specifically, $23,485,922.07 plus post-judgment interest.

## FOURTH CLAIM FOR RELIEF

### CPLR 5227 and 22 U.S.C. § 8772/Section 201(a) of TRIA

83. Plaintiffs repeat and re-allege each of the preceding Paragraphs as if fully set forth herein.

84. Under Federal Rule of Civil Procedure 69, "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."

85. The Blocked Financial Assets are subject to execution in satisfaction of the Judgment under 22 U.S.C. § 8772 and/or section 201(a) of TRIA, as set forth above.

86. The Blocked Financial Assets constitute a debt that Clearstream owes to Iran.

87. Under CPLR 5227, Plaintiffs are entitled to an order requiring Clearstream to pay to Plaintiffs so much of the debt as is sufficient to satisfy the outstanding compensatory damages awarded in the Judgment, specifically, $23,485,922.07 plus post-judgment interest.

[*Remainder of page left blank intentionally*]

WHEREFORE, Plaintiffs are entitled to:

1. An Order subjecting the Blocked Financial Assets to execution in an amount sufficient to satisfy Plaintiffs' outstanding award of compensatory damages, specifically, $23,485,922.07 plus post-judgment interest.

2. In the alternative, an Order directing Clearstream to return the Blocked Financial Assets to New York and an Order subjecting the Blocked Financial Assets to execution in an amount sufficient to satisfy Plaintiffs' outstanding award of compensatory damages, specifically, $23,485,922.07 plus post-judgment interest.

3. An Order requiring Clearstream to deliver to Plaintiffs $23,485,922.07 plus post-judgment interest.

4. An Order requiring Clearstream to pay to Plaintiffs $23,485,922.07 plus post-judgment interest.

5. Such other and further relief as may be necessary to subject so much of the Blocked Financial Assets to execution and turnover in satisfaction of Plaintiffs' outstanding award of compensatory damages, specifically, $23,485,922.07 plus post-judgment interest.

6. Such other and further relief as the Court may deem necessary or appropriate under the circumstances.

Dated: New York, New York
February 28, 2022

STROOCK & STROOCK & LAVAN LLP

By: /s/ Patrick N. Petrocelli
James L. Bernard
Patrick N. Petrocelli
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Fax: (212) 806-6006
jbernard@stroock.com
ppetrocelli@stroock.com

*Attorneys for Plaintiffs*